# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| Nancy Moore, Robert C. Semczak, Guardian of the Estate of Theresa Michalak, and Janet Aprile, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) |
| Plaintiffs, | )Case No. _____ ) |
| v | )Hon. _____ ) |
| Auto Club Group, Auto Club Services, Auto Club Insurance Association, MemberSelect Insurance Company, and Fremont Insurance Company, | ) ) ) ) ) ) |
| Defendants. | ) |

_____

# CLASS ACTION COMPLAINT

# JURY TRIAL DEMANDED

## PLAINTIFFS' CLASS ACTION COMPLAINT

Plaintiffs Nancy Moore, Robert C. Semczak, Guardian of the Estate of Theresa Michalak, and Janet Aprile ("Plaintiffs"), individually and on behalf of all others similarly situated, through the undersigned attorneys, upon personal knowledge as to their own acts and status, and upon information and belief based upon the investigation of counsel as to the remaining allegations, allege as follows.

## I. INTRODUCTION

1.      This is a class action brought by Plaintiffs on behalf of all individuals (the Class) who received allowable expenses in the form of family provided/non-agency provided attendant care benefits under the Michigan Automobile No-Fault Insurance Act ("Act") from the Auto Club Group, Auto Club Services, Inc., Auto Club Insurance Association, MemberSelect Insurance Company, or Fremont Insurance Company ("Defendants") during the class period.

2.      The Act, Subsection 3107(1)(a) says that an injured person is entitled to recover "*allowable expenses*" consisting of *"all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery or rehabilitation*."  These benefits are payable for life and without regard to any "cap" or "ceiling."

3.      Courts have interpreted allowable expenses to include both unskilled and skilled in-home attendant care and nursing services. As with any allowable

1

expense, these services must be "reasonably necessary" and the amount claimed must be a "reasonable charge."

4.     Court decisions have made it clear that in-home attendant care and nursing services rendered by family, friends, and neighbors of the injured person are compensable under the Act.  The no fault benefit lets injured accident victims hire outside help or employ family members, so that the injured person can remain at home rather than be institutionalized.

5.     Regarding the reasonableness of the charges, several court decisions hold that it is appropriate to consider commercial rates charged by professional agencies for similar services. In *Sharp v Preferred Risk Mutual Ins Co*, 142 Mich App 499 (1985), the Court of Appeals said: *"[C]omparison to rates charged by institutions provides a valid method for determining whether the amount of an expense was reasonable and for placing a value on comparable services performed [by family members]."* Pursuant to this concept, claims for family-provided attendant care are frequently based upon the commercial rate that would be charged by a professional agency rendering the same services.

6.     This case only involves the "reasonable charge" element of attendant care benefits.  There is no issue as to whether the care was reasonably necessary, or related to the auto accident; whether the charge was actually incurred, adequately supported or timely filed; nor any other common defense to a PIP claim.  **To be sure,**

2

**Defendants have <u>approved</u> all the no-fault claims for attendant care benefits, for all class members, for the entirety for the class period, and Defendants have issued payment on the claims, albeit at an improper, unreasonable and low hourly rate.**

7.     Since at least 2011 and through the present, Defendants engaged in a systematic underpayment of family provided/non-agency provided attendant care benefits ("Benefits") through the use of a series of reports they falsely claimed were valid surveys of commercial agency payment rates for attendant care providers.

8.     Defendants contracted for and obtained the reports ("P&M Survey") through a third-party accounting firm, Plante Moran, LLP.

9.     Defendants' use of the reports resulted in improper underpayment of family provided/non-agency provided attendant care claims, which do not meet the Act's requirements.

10.     Defendants' key employees involved in obtaining the reports have testified under oath, or otherwise acknowledged that the reports were false and misleading relative to paying Benefits.

11.     Plante Moran, LLP key employees testified under oath as to problems with the reliability and accuracy of the P&M Survey.  The deficiencies render the reports inadequate for purposes of calculating and payment of Benefits.

12.     Moreover, upper management of Defendants were aware of the false

3

and misleading nature of the reports, instructed Plante Moran LLP to develop the reports, including to create multiple versions and, by the plan and scheme of upper management, knowingly kept information about the deficient nature of the P&M Survey from its claims adjusters and claims managers to ensure Benefits were paid at artificially and improperly low rates in violation of the Act.

13.     Defendants' actions represent a common policy, course of action and conduct; it was uniformly applied to all class members; it violated the Act and amounts to a breach of contract for the same reasons; and caused all class members the same injury – underpayment of Benefits.

14.     For the reasons set forth herein, Plaintiffs challenge Defendants' use of the P&M Survey to calculate the hourly rates paid in adjusting their, and other class members'', claims for Benefits.

## II. PARTIES

### A.     PLAINTIFFS

15.     Plaintiff Nancy Moore is a resident and citizen of Las Vegas, Nevada. She was insured under a AAA Michigan No-Fault insurance policy.  She was injured in an automobile accident on June 23, 1982, and her PIP claim was adjusted by AAA. Upon information and belief, her benefits, which are being paid currently and into the foreseeable future, were calculated using the P&M Survey.

16.     Plaintiff Robert C. Semczak, Guardian of the Estate of Theresa

Michalak is a resident and citizen of Novi, Michigan. Ms. Michalak was insured under a AAA Michigan No-Fault insurance policy. She was injured in an automobile accident on November 19, 1974 and her PIP claim was adjusted by AAA. Upon information and belief, her benefits, which are being paid currently and into the foreseeable future, were calculated using the P&M Survey.

17.     Plaintiff Janet Aprile is a resident and citizen of Lake Orion, Michigan. She was insured under a AAA Michigan No-Fault insurance policy. She was injured in an automobile accident on January 21, 2005, and her PIP claim was adjusted by AAA. Upon information and belief, his benefits, which are being paid currently and into the foreseeable future, were calculated using the P&M Survey.

### B.     DEFENDANTS

18.     Defendant, Auto Club Group, domiciled at 1 Auto Club Drive, Dearborn, Michigan 48126, is a Michigan Corporation and provides several automobile services to its customers including insurance through Auto Club Insurance Association, MemberSelect, and other property and casualty subsidiaries which primarily underwrite automobile insurance policies.

19.     Defendant Auto Club Group owns 100% of the shares of Auto Club Services, Inc.

20.     Defendant Auto Club Services, Inc., is domiciled at 1 Auto Club Drive, Dearborn, Michigan 48126, and is a Michigan Profit Corporation.

5

21.   Auto Club Services, Inc., is Attorney-in-Fact for Auto Club Insurance Association.

22.   Defendant Auto Club Insurance Association, domiciled at 1 Auto Club Drive, Dearborn, Michigan 48126, is a Michigan Property and Casualty Reciprocal Insurance Company licensed to conduct business in Michigan.

23.   Auto Club Insurance Association writes personal lines property and casualty coverage and is a licensed insurer in the states of Illinois, Michigan, Minnesota, Nebraska, New Hampshire, New York, North Dakota, Pennsylvania and Wisconsin.

24.   Auto Club Insurance Association owns 100% of MemberSelect Insurance Company.

25.   MemberSelect Insurance Company, domiciled at 1 Auto Club Drive, Dearborn, Michigan 48126, is a Michigan Insurance Company licensed to conduct business in Michigan.

26.   MemberSelect Insurance Company is a capital stock company which means it is an insurance company owned by its stockholders, the Auto Club Insurance Association, rather than policyholders.

27.   Fremont Insurance Company (formerly known as Fremont Mutual Insurance Company), domiciled at 933 E Main Street, Fremont, Michigan 49412, is a Michigan Insurance Company licensed to conduct business in Michigan.

28. Auto Club Insurance Association owns 100% of Fremont Insurance Company.

29. According to Auto Club Group, when referring to insurance and the other services it offers, "members typically view the product or service as being a "AAA" product or service.

30. Defendants typically identify themselves to the Class in several ways: as AAA on their letterhead; as AAA Insurance/MemberSelect Insurance Company and AAA on the policies of insurance; as AAA and MemberSelect Insurance Company on checks; and at other times collectively as "Auto Club Insurance."

## III. JURISDICTION AND VENUE

31. The Court has subject matter jurisdiction over Plaintiffs' class claims pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because the combined claims of the proposed Class Members exceed $5,000,000 and because Defendants are citizens of different states than Plaintiffs, and there are at least one hundred members of the putative class. Further, in determining whether the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d)(2) is met, the claims of the putative class members are aggregated. 28 U.S.C. § 1332(d)(6).

32. This Court has personal jurisdiction over each of the Defendants because they are headquartered, and regularly conduct business in this District.

33. Venue is proper in this District pursuant to: (1) 28 U.S.C. § 1391(b)(2)

in that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District; and (2) 28 U.S.C. § 1391(b)(3) in that Defendants are subject to personal jurisdiction in this District.

34.     All conditions precedent to this action have occurred, been performed, or have been waived.

## IV. FACTUAL ALLEGATIONS

35.     During the relevant period, members of the Classes (defined below) throughout the United States received Michigan No-Fault PIP benefits from Defendants.

36.     Each class member shares certain common facts, including for example: (1) they are or were receiving Michigan No-Fault PIP benefits from a Defendant under a Michigan No-Fault automobile insurance policy or otherwise under the law during the class period; (2) at all relevant times, Defendants were required to comply with the Act and controlling case law as the insurer responsible for the PIP claims; and (3) Defendants used the deficient P&M Survey to determine and pay class member Benefits, all without disclosure to class members.

37.     Plaintiffs and members of the Classes suffered an injury in fact caused by the improper no-fault benefit claims handling and payments as set forth in this Complaint.

### A.    BACKGROUND OF THE MICHIGAN AUTOMOBILE NO-FAULT INSURANCE ACT, MICH. COMP. LAWS § 500.3101, ET SEQ.

38.    Michigan adopted the No-Fault Automobile Insurance Act, Mich. Comp. Laws § 500.3101, *et seq*, with a goal "to provide victims of motor vehicle accidents assured, adequate, and prompt reparation for certain economic losses." *Shavers v Attorney General*, 402 Mich. 554, 267 N.W.2d 72 (1978).

39.    The principle section of the No-Fault Act establishing benefits available to an injured person is Mich. Comp. Laws § 500.3107 requiring insurers to pay for "Allowable expenses consisting of all reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation."

40.    The No-Fault Act is remedial in nature and is to be liberally construed in favor of those it intends to benefit: the accident victims. *Burke v. Warren*, 105 Mich. App. 556, 307 N.W.2d 89 (1981).

41.    Medical and rehabilitation expenses have always been at the core of the No-Fault System. The early goal of the No-Fault System was "compensation of injured persons, adequately, promptly, and without regard to fault for medical expenses, wage loss and rehabilitation expenses."[1]

---

[1] No Fault Insurance After Three Years, A Report to the Governor, Insurance Bureau of Michigan Department of Commerce, October 6, 1976.

42.     Attendant care benefits are allowable expenses under Mich. Comp. Laws § 500.3107 and are recoverable even when provided by an injured person's family members. *Van Marter v. American Fidelity Fire Ins. Co.*, 114 Mich. App. 171, 318 N.W.2d 679 (1982).

43.     Under the No-Fault Act, an insurance company is responsible to compensate family members and friends who provide attendant care services "to the same extent as they would be if the services had been rendered by someone other than" the family member or friend. *Van Marter*, 114 Mich. App. at 178-79, 318 N.W.2d at 683. To do otherwise would "penalize both the injured insured and his family for providing care which would otherwise be performed by a less personalized health care industry." *Van Marter*, 114 Mich. App. at 181, 318 N.W.2d at 683.

44.     Under the Act, an insurance company must pay a family member a reasonable amount for nursing services rendered at home. *Manley v. D.A.I.I.E.*, 425 Mich. 140, 388 N.W.2d 216 (1986).

45.     Attendant care expenses are presumed to be provided at their reasonable market value. *Manley v. D.A.I.I.E*, 127 Mich. App. 444, 339 N.W.2d 205 (1986). "The relevancy of agency rates in determining a reasonable rate for home care has long been implied in Michigan jurisprudence." *Hardrick v Auto Club Ins. Ass'n*, 294 Mich. App. 651, 701, 819 N.W.2d 28, 55 (2011).

46.     To establish a right to payment, the claimant must present the insurance company with "reasonable proof of the fact and the amount of loss sustained." Mich. Comp. Laws § 500.3142.  The No-Fault Act "requires only reasonable proof of loss, not exact proof." *Williams v. AAA Mich.*, 250 Mich. App. 249, 267, 646 N.W.2d 476, 485 (2002).

47.     When reasonable proof of the loss and the amount of the claimed benefit has been received, the insurance company has a duty to investigate on its own if it wishes to challenge the amount of benefits owed. *Id*.

### B.    *DEFENDANTS' USE OF A DEFECIANT SURVEY TO IMPROPERLY PAY ATTENDANT CARE AT ARTIFICIALLY LOW RATES*

48.     Defendants failed to comply with their obligation to properly evaluate and pay Benefits under the Act, and instead, hired an accounting firm to assemble a so-called "survey" of attendant care providers (the P&M Survey) that has no scientific or statistical validity, and is deceptive and misleading.

49.     By Defendants' design, the P&M Survey was intentionally misapplied to improperly and artificially lower the class members' family provided/non-agency provided PIP benefits in violation of the Act.

50.     Prior litigation and discovery have confirmed that the P&M Survey was created at the direction of AAA company lawyer, Daniel Siefer and AAA Vice President Michael Stewart.  There was no requirement under the law to create, design

11

or use a survey to pay PIP benefits.  Defendants' use of the P&M Survey was not dependent on any class members' actions, decision or other input from any class member.

51.     The use of the P&M Survey raises several problems, all of which apply to the class.

52.     First, Plante Moran, LLP Accountant, Sharon Filas, the author of the P&M Survey testified under oath that the surveys she conducted in 2008 and 2011, were not actually surveys and lacked valid statistical authority and thus, it did not accomplish what AAA purports it was intended to do.

53.     Second, the P&M Survey does not represent a proper evaluation of no-fault benefits as required by law, including a lack of overtime wages for hours worked in excess of 40 hours per week and other non-cash compensation.

54.     Furthermore, as testified by AAA Director of Casualty Claims in Michigan, Sandra Carlson, AAA never adjusted the rates after 2011, but instead, used old, stale rates from the P&M Survey when adjusting PIP claims of class members.

55.     Third, and perhaps worse than anything, there are at least *two versions* of the P&M Survey – one was provided to adjusters with lower hourly rates and another version provided only to a select group of upper management, and not available to adjusters and managers, that provided for higher hourly rates.  Those

higher hourly rates, at a minimum, should have been applied to Plaintiffs' and the class members' claims for benefits.

56.     The above-described conduct represents a companywide policy for systematic use in paying Benefits to its insureds.   Specifically, Defendants' implemented use of the P&M Survey in a systematic and uniform manner, on all class members, in the same manner and for the same reason.

57.     The effects of Defendants' wrongful and systematic conduct were experienced by all class members, and it caused the same injury – underpayment of Benefits otherwise admittedly owed by Defendants.

58.     Therefore, a class wide remedy is appropriate; including requiring Defendants to conduct a valid PIP benefit valuation in compliance with the Act for all class members, and pay back improperly denied Benefits and other damages to the class.

## V. FRAUDULENT CONCEALMENT

59.     The Michigan Legislature has seen fit to create certain exceptions to statutes of limitations. One such exception is the fraudulent-concealment rule found in Mich. Comp. Laws § 600.5855, which provides:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who

is liable for the claim, although the action would otherwise be barred by the period of limitations.

*Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*, 264 Mich. App. 632, 642, 692 N.W.2d 398 (2004).

60.     Defendants' conduct amounts to employment of artifice, a plan to prevent inquiry, an effort to escape investigation, and mislead or hinder acquirement of information disclosing a right of action by class members against Defendants for the Benefits at issue in this case.

61.     Defendants' acts of obtaining the P&M Survey for use as a replacement for paying reasonable charges at reasonable rates; use of two different survey versions in adjusting PIP claims; withholding and suppressing use of the version providing for the higher rates by its adjusters and from its insureds; and not disclosing the use of the improper and invalid P&M Survey to its insureds; were of an affirmative character, misrepresentations and fraudulent. *Tonegatto v. Budak,* 112 Mich. App. 575, 583, 316 N.W.2d 262 (1982), quoting *De Haan v. Winter,* 258 Mich. 293, 296, 241 N.W. 923 (1932).

62.     Defendants' fraud amounted to active engagement, concealment and an arrangement or contrivance of an affirmative character designed to prevent subsequent discovery of the harm and cause of action by its insured, the class.  They thereby concealed the existence of a claim for underpaid Benefits.

14

63. Accordingly, Mich. Comp. Laws § 600.5855 applies in this case and the statute of limitations must be extended beyond the one-year rule normally applicable to PIP claims under the No-Fault Act for all class members accordingly.

## VI. CLASS ACTION ALLEGATIONS

63. Rule 23(a) ensures that the named Plaintiffs are appropriate representatives of the class whose claims they wish to litigate. The Rule's four requirements—numerosity, commonality, typicality, and adequate representation— "effectively 'limit the class claims to those fairly encompassed by the named plaintiff's claims.' " *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 156, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (quoting *General Telephone Co. of Northwest v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980)).

64. Plaintiffs bring this action individually and as representatives of all similarly situated PIP benefit recipients, pursuant to Federal Rule of Civil Procedure 23, on behalf of the below-defined Classes:

> **Attendant Care PIP Benefits Class:** All individuals who received attendant care benefits from Defendants at a home health aide rate during the Class Period.

> **Attendant Care Catastrophic Injury Sub Class:** All individuals who received attendant care benefits from Defendants at a rate higher than a home health aide during the Class Period.[2]

---

[2] The "Class Period" will be calculated based on the filing date of Plaintiffs' Complaint and the No-Fault one-year statute of limitations, and the Court's ruling on the application of Michigan's Fraudulent Concealment rule under MCL 600.5855.

**Attendant Care Bad Faith State Law Sub Class:** All individuals who received attendant care benefits from Defendants during the Class Period while residents of states providing for bad faith claims, including Alaska, Arizona, Arkansas, California, Colorado, Florida, Georgia, Hawaii, Idaho, Indiana, Iowa, Kentucky, Nevada, New Mexico, North Carolina, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Texas, Vermont, West Virginia and Wisconsin.[3]

Excluded from the above-defined Classes are Defendants and their affiliates, parents, subsidiaries, employees, officers, agents, and directors; any judicial officers presiding over this matter and the members of their immediate families and judicial staffs. Also excluded are individuals who received attendant care from commercial agencies or providers (that is by non-family members or friends).

65.   Plaintiffs reserve the right to modify or amend the definitions of the proposed classes before the Court determines whether certification is appropriate.

66.   Class Representative Nancy Moore suffered a severe spinal cord injury in a June 23, 1982, automobile accident resulting in quadriplegia that requires 24-hour attendant care. Ms. Moore's claim for attendant care benefits was adjusted using the Defendants' internal policies and procedures that required use of the P&M Survey undervaluing her claim for benefits.

67.   Class Representative Theresa Michalak suffered a severe traumatic

---

[3] The legal issues for these class members' bad faith claims are sufficiently similar, or identical, such that the criteria for a sub-class under Rule 23 case law is met and warranted.

brain injury in a November 19, 1974, automobile accident resulting in cognitive and emotional deficits that require ongoing attendant care services. Ms. Michalak's claim for attendant care benefits was adjusted using the Defendants' internal policies and procedures that requires use of the P&M Survey undervaluing her claim for benefits.

68.    Class Representative Janet Aprile suffered physical injuries in a January 21, 2005, automobile accident resulting in a need for ongoing attendant care services. Ms. Aprile's claim for attendant care benefits was adjusted using the Defendants' internal policies and procedures that require use of the PM Survey undervaluing her claim for benefits.

69.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).** This test "limit[s] the class claims to those fairly encompassed by the named plaintiffs' claims." *In re American Med. Sys., Inc*., 75 F.3d 1069, 1082 (6th Cir.1996) (citation and quotation omitted). The named class representatives meet the criteria for typicality.

70.    Typicality does not mean the same claims or facts.  *Senter v. General Motors Corp*., 532 F.2d 511, 525 n. 31 (6th Cir. 1976), cert. denied, 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976): "[t]o be typical a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law." 75 F.3d at 1078.

17

71.     Here, typicality requires a class representative with family-provided attendant care benefit claims that were approved and paid by Defendants using rates calculated from the P&M Survey. Furthermore, Plaintiffs' claims are typical of the claims of the other members of the Classes because, among other things, all Class members were comparably injured through Defendants' uniform misconduct described above.

72.     To be sure, there are no defenses available to Defendants that are unique to individual Plaintiffs, such as problems with claims being submitted, inadequate proof of injury or care, denied claims, etc.  All class members', and each class representative's, claims for non-agency provided attendant care were properly filed and accepted as such by Defendants, and they were approved and paid by Defendants. The only disputes involve the hourly rate Defendants.

73.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

74.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, Class members number in the tens of thousands.  The precise number of Class members and their addresses are presently

unknown to Plaintiffs, but may be reasonably ascertained from Defendants' records and files.  Similarly, Class members may be notified of the pendency of this action by mail, email, internet postings, and/or publication.

75.  **Commonality and Predominance – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).**  Cases involving statutes and contracts are particularly well-suited for class treatment because the class members face the same common questions of fact and law. *Mich Ass'n of Chiropractors v. Blue Cross Blue Shield of Mich.*, 300 Mich. App. 551, 834 N.W.2d 148 (2013); *Thompson v. Cmty. Ins. Co.*, 213 F.R.D. 284, 292 (S.D. Ohio 2002)(citing *Kleiner v. First Nat'l Bank of Atlanta*, 97 F.R.D. 683, 691 (N.D.Ga. 1983) ("[C]laims arising from interpretations of a form contract appear to present the classic case for treatment as a class action, and breach of contract cases are routinely certified as such."); *Peters v. Cars to Go, Inc.*, 184 F.R.D. 270 (W.D.Mich.1998).

76.  Defendants utilize a form insurance contract.  Furthermore, as required in Michigan, all no-fault insurance contracts must comply with the Michigan No-Fault statute. Thus, Defendants' legal obligations to its insureds under the No-Fault Act and its insurance contract is identical for all class members.

77.  Defendants utilize standard attendant care PIP claim adjustment processes and rules, as testified by AAA Director of Casualty Claims in Michigan, Sandra Carlson.

19

78.    The Defendants use a standardized process manual for adjusting PIP claims called the Claims Reference Library ("CLR").

79.    The CLR was designed to ensure consistent results by Defendants' adjusters when adjusting PIP claims and adherence to the no-fault law.

80.    The CLR governed Defendants' adjusters work relative to adjusting family provided attendant care benefits for all class members, including how to pay family provided attendant care rates as required by the Michigan No-Fault Act.

81.    Defendants' CLR, or other rules to be uncovered in discovery, mandate use of the P&M Survey by all AAA adjusters when adjusting any claim for family-provided attendant care benefits.  The Supreme Court has held that if a company is charged with use of a biased procedure or evaluation method, such as Defendants' CLR and P&M Survey as alleged here, that "clearly would satisfy the commonality and typicality requirements of Rule 23(a)", for a class or persons "who might have been prejudiced" by the procedure or method. *Wal-Mart Stores, Inc., v Dukes*, 564 U.S. 338, 353, 131S.Ct. 2541, 180 L.Ed.2d 374 (2011).

82.    Predominance is a question of efficiency. See *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 615–16, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); Committee Notes to 1966 Amendment to Fed.R.Civ.P. 23; William B. Rubenstein, 2 *Newberg on Class Actions* § 4:49 (5th ed. 2012). The predominance inquiry asks "Is it more efficient, in terms both of economy of judicial resources and of the

expense of litigation to the parties, to decide some issues on a class basis or all issues in separate trials? *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 362 (7th Cir. 2012), cert. granted, judgment vacated, 569 U.S. 1015 (2013), and judgment reinstated, 727 F.3d 796 (7th Cir. 2013).

83.    A class action is the more efficient procedure for determining liability and damages in a case such as this, involving a defective P&M Survey used to calculate Benefits for tens of thousands of insureds, yet not a cost to any one of them large enough to justify the expense of an individual suit.

84.    Common questions of law and fact existing as to all Class members predominate over questions affecting only individual Class members. Such common questions of law or fact include:

    a.    Whether Defendants' use of the P&M Survey amounted to a violation of the Michigan no-fault Act or case law;

    b.    Whether Defendants' use of the P&M Survey amounted to a breach of contract;

    c.    Whether the P&M Survey was a valid tool for adjusting class members' attendant care benefits;

    d.    If Defendants' use of the P&M Survey was valid, why were there two versions – one with higher rates than the other; and was Defendants' use of the two versions proper under the No-Fault Act and insurance contract;

    e.    Whether Defendants' management improperly withheld or otherwise suppressed the version of the survey providing for higher attendant care benefit rates from claims adjusters and its insured;

21

f.   Whether the P&M Survey resulted in undervaluing of PIP benefits for class members;

g.   If Defendants' use of the P&M Survey caused harm to class members, what remedy is required;

h.   Whether an injunction is warranted;

i.   Whether Mich. Comp. Laws § 600.5855 fraudulent concealment law applies to extend the statute of limitations;

j.   Whether Defendants are liable for damages, and if so, the amounts of such damages; and

k.   Whether Plaintiffs and the Class members are entitled to any other remedy or relief, including an award of attorneys' fees and 12% interest under the No-Fault Act.

85.   Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiffs, on behalf of themselves and the other Class members. Similar or identical violations, business practices, and injuries are involved, and insurance policy rights – especially those involving PIP benefits under Michigan's No-Fault Act – involve uniform, objective questions of law and fact, both for the prosecution and for the defense. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that predominate in this action.  Thus, the elements of commonality and predominance are both met.

86.   For the named Plaintiffs and absent class members, the witnesses, contracts, AAA documents, Plante Moran documents, agency rates, and the payment of family-provided attendant care benefits based on the P&M survey(s) for class

members' during the class period will all include the same evidence. Thus, the elements of commonality and predominance are both met.

87.    If Defendants prevail on the common question(s) at issue in this putative class action, they will be exonerated and insulated against all class members who do not opt out from this action, thus demonstrating the predominance element – as a matter of efficiency – is met and certification is warranted.

88.    **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Typicality requires a class representative who is receiving non-agency provided attendant care benefits that were approved and paid by Defendants using rates calculated from the P&M Survey. Each named class representatives meet the criteria for typicality, and representatives Moore and Semczak meet the criteria for the sub class definitions, and are thus typical.

89.    Plaintiffs' claims are typical of the claims of the other members of the Classes because, among other things, all Class members were comparably injured through Defendants' uniform misconduct described above. Further, there are no defenses available to Defendants that are unique to individual Plaintiffs, such as problems with claims being submitted, inadequate proof of injury or care, denied claims, etc.

90.    All class members', and each class representative's, claims for family-provided attendant care were properly filed and accepted as such by Defendants, and

they were approved and paid by Defendants. The only disputes involve the hourly rate Defendants used.

91.     This reasoning is consistent with Sixth Circuit case law holding that "[n]o matter how individualized the issue of damages may be," determination of damages "may be reserved for individual treatment with the question of liability tried as a class action," *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 854 (6th Cir. 2013)(citing *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir.1988)).

92.     **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).**  Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other Class members they seek to represent, they have retained counsel competent and experienced in complex class action litigation, and they will prosecute this action vigorously.  The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel, who are experienced class action lawyers.

93.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.  The damages suffered by each of the Plaintiffs and the other members of the Classes are relatively small – several dollars per hour –

compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

94.     **Particular Issues – Federal Rule of Civil Procedure 23(c)(4).**  In the event unforeseen issues preclude class certification under Fed.R.Civ.P. 23(b)(3), the case is still appropriate for class certification under Fed.R.Civ.P. 23(c)(4), as to the particular issues of liability.

## VII. CLAIMS ALLEGED

### COUNT I - VIOLATIONS OF THE MICHIGAN NO FAULT AUTOMOBILE INSURANCE ACT

95.     Plaintiffs incorporate the above paragraphs as if fully set forth herein.

96.     Plaintiffs have standing to pursue a cause of action for violation of the Michigan No-Fault Act because Plaintiffs and members of those Classes receive PIP benefits under the Act from Defendants', they suffered an injury-in-fact and lost money as a result of Defendants' actions as set forth herein.

97.     Plaintiffs are entitled to insurance under a policy of insurance issued by Defendants or otherwise entitled to automobile no-fault insurance benefits through Defendants.

98.     Plaintiffs were involved in motor vehicle accidents.

99.     As a result of the motor vehicle accidents Plaintiffs sustained personal injuries and incurred allowable expenses including attendant care expenses.

100.    Plaintiffs complied fully with the terms of the automobile insurance policies and/or the requirements of the No-Fault Act and Defendants have failed to properly pay allowable expenses consisting of non-agency provided attendant care benefits due Plaintiffs under the Michigan No Fault Automobile Insurance Act, Mich. Comp. Laws §500.3101, *et seq.*

101.    Consequently, Plaintiffs seek all available damages and relief to which they are entitled under the Michigan No-Fault Act, including: underpaid or unpaid attendant care benefits and interest, and reasonable attorneys' fees and costs.

## COUNT II - BREACH OF CONTRACT AND BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

102.    Plaintiffs incorporate the above paragraphs as if fully set forth herein.

103.    The above conduct amounts to a breach of each class members' insurance contract for which Defendants are liable.

104.    Likewise, under Michigan state contract law, "[w]here a party to a contract makes the manner of its performance a matter of its own discretion, the law

does not hesitate to imply the proviso that such discretion be exercised honestly and in good faith." *Burkhardt v. City Nat'l Bank of Detroit*, 57 Mich.App. 649, 226 N.W.2d 678, 680 (1975).

105.   Defendants' conduct amounts to a breach of the implied covenant of good faith and fair dealing in that they knowingly used the deficient P&M Survey in adjusting class members' claims for Benefits without good faith, or express authority within the contract.

106.   Consequently, Plaintiffs seek all available damages and relief to which they are entitled under Michigan contract and remedy law.

## COUNT III - UNJUST ENRICHMENT

107.   Plaintiffs incorporate the above paragraphs as if fully set forth herein.

108.   In the event it is determined that no contract rights exist for the wrongs alleged herein, the above conduct amounts to unjust enrichment of Defendants at class members' expense.

109.   Consequently, Plaintiffs seek all available damages and relief to which they are entitled under Michigan unjust enrichment and remedy law.

## COUNT IV - BAD FAITH BREACH OF CONTRACT

110.   Plaintiffs incorporate the above paragraphs as if fully set forth herein.

111.   Through the conduct described in this Complaint, Defendants engaged in unfair claim settlement practices prohibited in several states and for example, by,

Nev. Rev. Stat. § 686A.310, including by not limited to: (a) misrepresenting pertinent facts or insurance policy provisions relating to coverage at issue; (b) failing to adopt and implement reasonable standards for the prompt investigation and processing of claims; (c) failing to effectuate prompt, fair and equitable settlement of claims in which Defendants' liability has become clear; (d) compelling Plaintiffs to investigate this litigation to recover amounts due under the Policies by offering substantially less than the amounts ultimately recovered in actions brought by such insureds, when the insureds have made claims for amounts reasonable similar to the amounts ultimately recovered; (e) attempting to compel and coerce Plaintiffs to abandon claims by threatening to cancel the Policies; (f) failing to comply with the provisions of Nev. Rev. Stat. §§687B.310 to 687B.390 or 678B.410; and (g) failing to provide reasonable explanation of the basis for denial of Plaintiffs' claims; (h) advising an insured or claimant not to seek legal counsel; (i) misleading an insured or claimant concerning any applicable statute of limitations.

112.   As a direct and proximate result of the acts of Defendants, Plaintiffs have been injured.

113.   Implied in the Policies is a covenant that Defendants would act in good faith and deal fairly with Plaintiffs and that Defendants would do nothing to interfere with the rights of Plaintiffs to receive the benefits of the Policies, and that Defendants

would give the same level of consideration to the interests of Plaintiffs as Defendants give to their own interests.

114.   In breach of this covenant, Defendants did the things and committed the acts described in this Complaint for the purpose of consciously and unreasonably withholding from Plaintiffs the rights and benefits to which Plaintiffs were entitled under the Polices without any legitimate basis for doing so and without considering the interests of Plaintiffs to the same extent as Defendant considered its own interests.

115.   The acts of Defendants are inconsistent with the reasonable expectations of their insureds, are contrary to established practices and legal requirements, and constitute bad faith.

116.   Defendants' unreasonable conduct described in this Complaint was and is despicable and was done to vex and injure Plaintiffs with a willful and conscious disregard for Plaintiffs' rights, constituting oppression, fraud and/or malice. Defendants ignored Plaintiffs' interests and concerns, consciously placed its own economic interests first, with the intent to injure Plaintiffs. Plaintiffs, therefore, are entitled to recover all attorney's fees reasonable incurred in efforts to obtain Policy benefits that wrongfully were withheld in bad faith by Defendants and to recover punitive damages from Defendants in an amount sufficient to punish Defendants and make an example of Defendants in order to deter similar conduct in the future.

## VIII. DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury of all claims in this Complaint so triable. Plaintiffs also respectfully request leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

## IX. REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Classes proposed in this Complaint, respectfully request that the Court enter judgment as follows:

A.  Declaring that this action is a proper class action, certifying the Class and subclass requested herein, designating each of the respective Plaintiffs as Class Representatives, and appointing the undersigned counsel as Class Counsel;

B.  Declaring the use of the P&M Survey to be in violation of the Michigan No-Fault Act and case law and ordering corrective measures to be taken, including but not limited to Defendants conducting a proper calculation of the PIP benefits owed to each class member using a legal benefit calculation method;

C.  Ordering Defendants to pay actual damages to Plaintiffs and the other members of the Classes;

D.  Ordering Defendants to pay statutory damages, as provided by the applicable Michigan statutes invoked above, to Plaintiffs and Class Members;

E.  Ordering Defendants to pay restitution to Plaintiffs and the other members of the Classes;

F.  Ordering Defendants to pay attorneys' fees and litigation costs;

G.  Ordering Defendants to pay both statutory and pre- and post-judgment interest on any amounts awarded; and

H.  Ordering such other and further relief as may be just and proper.

Dated: February 8, 2019                    Respectfully submitted,

                                           SOMMERS SCHWARTZ, P.C.

                                           By:  */s/ Jason J. Thompson*
                                           Jason J. Thompson (P47184)
                                           Kevin J. Stoops (P64371)
                                           Rod Johnston (P80337)
                                           One Towne Square, 17th Floor
                                           Southfield, Michigan 48076
                                           (248) 355-0300
                                           jthompson@sommerspc.com
                                           kstoops@sommerspc.com
                                           rjohnston@sommerspc.com

                                           LISS, SEDER & ANDREWS, P.C.
                                           Nicholas S. Andrews (P42693)
                                           39400 Woodward Ave., Suite 200
                                           Bloomfield Hills, MI 48304
                                           248.647.9700
                                           nandrews@lissfirm.com

                                           *Attorneys for Plaintiffs and
                                           the Putative Classes*