## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

NANCY MOORE, et al.,

      Plaintiffs,

                                   Case No: 19-10403
                                   Honorable Denise Page Hood

v.

AUTO CLUB SERVICES, et al.,

      Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING
## IN PART DEFENDANTS' SECOND
## MOTION TO DISMISS [ECF No. 33]

## I.      INTRODUCTION

Plaintiffs filed a 28 U.S.C. § 1332(d)(2) Class Action Complaint ("Complaint") on February 8, 2019, alleging that Defendants underpaid the proper amount of attendant care benefits owed to the members of the class under Subsection 3107(1)(a) of the Michigan Automobile No-Fault Insurance Act (the "Act"). On April 18, 2019, Defendants collectively filed a Rule 12(b)(6) Motion to Dismiss ("Initial Motion") [ECF No. 11], and the Initial Motion was fully briefed.

The Court held a July 24, 2019 hearing regarding the Initial Motion, at which Plaintiffs conceded that the best course of action would be to file an amended complaint, except that the Court should address two issues:

1.   Whether the One Year Back Rule barred claims for damages incurred prior to February 8, 2018 and was not subject to tolling, and

2.   Whether Count IV should be dismissed because Michigan does not recognize a claim for bad faith breach of contract.

The parties argued those two issues at the July 24, 2019 hearing, and the Court took them under advisement.   The Court also allowed Plaintiffs to file an amended complaint.

On August 19, 2019, Plaintiffs timely filed a First Amended Class Action Complaint ("Amended Complaint"). ECF No. 28. The Amended Complaint contained the four counts asserted in the Original Complaint, plus two new counts: (a) Count I – Violations of the Act; (b) Count II – Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealings; (c) Count III – Unjust Enrichment; (d) Count IV- Bad Faith Breach of Contract. (e) Count V - Intentional or Tortious Interference with Contractual Relationship (by Defendants Auto Club Group and Auto Club Services, the Defendant Non-insurers); and (f) Count VI - Civil Conspiracy (against all Defendants).

2

On September 16, 2019, Defendants filed a Motion to Dismiss Plaintiffs' First Amended Class Action Complaint ("Second Motion"). ECF No. 33.  The Second Motion has been fully briefed, and a hearing was held on November 13, 2019.  On May 31, 2020, the Court granted the Initial Motion with respect to Count IV but denied the One Year Back Rule argument described above.

For the reasons that follow, the Court GRANTS IN PART and DENIES IN PART Defendants' Second Motion to Dismiss.  As the Court's resolution of the Second Motion dismisses Count I, the raised in the Defendants' Motion for Reconsideration, ECF No. 43, need not be addressed, and the Court denies as moot the Motion for Reconsideration.

## II.    BACKGROUND

## A.    Plaintiffs

The three named Plaintiffs have sued on behalf of themselves and request that they be representatives of a class. These three individuals will be collectively referred to as "Plaintiffs" and, when appropriate, the class will be referred to as "Plaintiff Class."

Plaintiffs currently have no-fault personal injury protection ("PIP") claims filed with Defendants and are receiving attendant care benefits. All Plaintiffs have been receiving these benefits at least since 2005. Each of the Plaintiffs' attendant

care benefits are being used to pay for family provided attendant care. All allegations in the Amended Complaint are based on Defendants' alleged "systematic underpayment of family provided/non-agency provided attendant care benefits ("Benefits") through the use of a series of reports they [Defendants] falsely claimed were valid surveys of commercial agency payment rates for attendant care providers." (the reports are referred to as the "P&M Surveys").

Plaintiffs' PIP claims have been adjusted by Defendants. Plaintiffs allege Defendants relied on the P&M Surveys to determine class benefits for their family provided attendant care services and adjusted Plaintiffs' claims. Plaintiffs allege that Defendants' use of the P&M Surveys was improper and injured Plaintiffs by paying less money than appropriate for their family provided attendant care benefits.

Litigation and discovery by Defendants in an (unidentified) prior case allegedly revealed that the P&M Surveys were created under the direction of a lawyer and Vice President at AAA. The creator of the P&M Surveys testified in that prior case, allegedly revealing the P&M Survey "lacked valid statistical authority." Other testimony (by the director of casualty claims for AAA) allegedly acknowledged that the rates in the P&M Surveys were not adjusted after 2011 and that AAA used previous P&M Surveys to determine class benefits.

**B.   Plaintiff Class**

4

Plaintiffs seek to establish a representative class under FRCP 23(a) for all individuals who received attendant care benefits from Defendants for the Class Period either at: (1) a "home health aide rate;" or (2) a "higher than a home health aide rate." Plaintiffs also bring suit on behalf of the sub-class of individuals who received benefits from Defendants during the Class Period while those individuals resided in states that provided for bad faith claims. Plaintiffs have pleaded facts sufficient to meet the requirements of a class action suit as outlined by FRCP 23(a) and FRCP 23(b).

The "Class Period" covered by the claim is in dispute. Plaintiffs allege that Defendants committed fraud by concealing their use of P&M Surveys.   Plaintiffs assert that, because of the alleged fraudulent action by the Defendants, Michigan's no-fault one-year back rule should be tolled for two years with respect to Plaintiffs' claims.

## III. APPLICABLE LAW

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint.   The Court must accept all well-pleaded factual allegations as true and review the complaint in the light most favorable to the plaintiff. *Eidson v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007); *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006).

As a general rule, to survive a motion to dismiss, the complaint must state sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   The complaint must demonstrate more than a sheer possibility that the defendant's conduct was unlawful.   *Id.* at 556. Claims comprised of "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.   Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV.   ANALYSIS

### A.   Rule 8

Defendants argue that all claims should be dismissed pursuant to Federal Rule of Civil Procedure 8 because Plaintiffs' Amended Complaint fails to provide fair notice of the factual basis of relief sought by Plaintiffs. Defendants contend that Plaintiffs failed to "identify each Defendants' role in the claims handling process" or make "allegations otherwise distinguishing the Defendants" from one another. ECF No.11, PgID 72. Defendants rely on two decisions where courts required plaintiffs to distinguish between defendants. *See Hubbard v. Select Portfolio Servicing, Inc*. No.16-11455, 2017 WL 9470640, at *6 (E.D. Mich. 2017); *Kerrigan*

6

*v. ViSalus, Inc*. 112 F. Supp. 3d 580, 601 (E.D. Mich. 2015).

Plaintiffs respond that their Amended Complaint meets the requirements of Rule 8 because it distinguishes between the individual Defendants and their respective roles. ECF No.17 PgID 114 (Amended Complaint ¶¶18-30). Plaintiffs state that "discovery has not yet begun" and acknowledge that "details as to who did what and when [still] need to be explored." Plaintiffs assert that "Defendants know exactly what their relationship is with each class member and each Defendant." ECF No.17, PgID 116-17. Plaintiffs state that Defendants "approved no-fault claims" for Plaintiffs and "Defendants themselves acknowledge the market place has become accustomed to referring to them as AAA." *Id.* at 116.

To meet the requirements for Rule 8, a plaintiff's complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "[M]ere conclusions" will not suffice a complaint requirement, but "legal conclusions can provide the complaint's framework" when they are supported by "factual allegations." *Iqbal*, 556 at 678.

The Court rejects Defendants' Rule 8 argument. Although Plaintiffs have not pleaded which of the three identified insurance companies holds their individual policies, they have pleaded facts in the Amended Complaint that allow the Court to make a reasonable inference that Defendants are liable. Plaintiffs' lack of specificity

as to which Defendant holds each policy allows for a reasonable inference of Defendants' liability and does not violate Rule 8, especially when Defendants are considered as two groups. The first group ("Defendant Insurers") is identified in the Amended Complaint at ¶¶ 23-28. The second group ("Defendant Non-insurers") is identified in the Amended Complaint at ¶¶ 18-22.

Accepting Plaintiffs' allegations as true, which the Court must do at this stage of the proceedings, Plaintiffs have adequately pleaded entitlement to relief. As it relates to the Defendant Insurers, Plaintiffs pleaded that each Plaintiff was receiving attendant care benefits from one of the Defendant Insurers and alleged that the Defendant Insurers made improper payments. These allegations support a reasonable inference that Plaintiffs are entitled to relief based on the injury they suffered because of the improper payment. The allegations also allow for a reasonable inference that Defendant Insurers are liable for Counts I-III because the improper payment resulted in Defendants retaining profits that were not theirs.

As it relates to Defendant Non-insurers, Plaintiffs pleaded facts that Defendant Non-insurers directed the creation and implementation of P&M Surveys that were known to be defective. Plaintiffs identify a business relationship in which the Defendant Non-insurers either owned or operated the Defendant Insurers and required the Defendant Insurers to use the P&M Surveys that caused the injury to

the Plaintiffs. Taken as true, these allegations allow for a reasonable inference that Plaintiffs are entitled to relief based on the injury they suffered due to improper payment at the Defendant Non-insurers' direction. These allegations place Defendant Non-insurers and Defendant Insurers on notice of all Counts because the business relationship between the two groups may make all of them subject to liability for Counts I-III (for the reasons stated above).

Defendants' reliance on the *Kerrigan* and *Hubbard* cases is not persuasive because those cases are distinguishable from the case at hand. *Kerrigan* involved Plaintiffs who alleged charges against thirty-one Defendants, so it was considerably more complex than the current case that involves only five Defendants. *Kerrigan*, 112 F. Supp. 3d at 601. *Kerrigan* also involved a RICO statute that required the plaintiffs to allege "each Defendant committed at least two predicate acts." *Id.* at 606. The *Kerrigan* court ordered the plaintiffs to amend their second complaint because it did not comply with the RICO statute's requirements. *Id.* at 602. *Hubbard* involved a pro se litigant who "raised very few factual allegations against any defendant." *Hubbard* 2017 WL 9470640, at 6. *Hubbard* does not compare to the current case in which Plaintiffs have divided Defendants into two groups and pleaded facts to establish the plausibility of claims against both groups.

9

For these reasons, the Court finds that Plaintiffs have met the requirements of Rule 8, pleaded facts that show the plausibility of the claims, and properly placed Defendants on notice of the allegations against them.

## B.  Article III Standing

Defendants argue that the Amended Complaint should be dismissed for failure to demonstrate Article III standing. To establish Article III standing, a Plaintiff must show: "(1) [he/she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.,* 528 U.S. 167, 180–81 (2000). The Supreme Court has stated "the relevant showing for purposes of Article III standing … [is] injury to the plaintiff." *Id*. To be fairly traceable, the injury cannot have been "'th[e] result [of] the independent action of some third party not before the court.'" *Doe v DeWine*, 910 F.3d 842, 849–50 (6th Cir. 2018) (quoting *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992)). If a plaintiff does not meet the burden of Article III standing, the case cannot be heard in federal court, and "the only function remaining of the court is that of announcing the fact and dismissing the case." *Steel Co. v. Citizens for Better Environment,* 523 U.S. 83, 103 (1998).

In class action suits, "a plaintiff 'cannot represent those having causes of action against other defendants against whom the plaintiff has no cause of action and from whose hands he suffered no injury.'" *Thompson v. Bd. of Ed. of Romeo Cmty. Sch.*, 709 F.2d 1200, 1204–05 (6th Cir. 1983) (quoting *LaMar v. H & B Novelty & Loan Co.* 489 F.2d 461, 462 (9th Cir. 1973). There are "two exceptions to this principle …: (1) Situations in which all injuries are the result of a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury; and (2) Instances in which all defendants are *juridically related* in a manner that suggests a single resolution of the dispute would be expeditious." *Id.* (emphasis in original).

Defendants assert Plaintiffs have not demonstrated that their injury is fairly traceable to Defendants because Plaintiffs have not pleaded: (a) which individual insurer holds each individual Plaintiff's policy; or (b) the specific Defendants that underpaid Plaintiffs' attendant care benefits. Defendants rely on rulings in three cases where the court either allowed the plaintiffs to amend their complaint or dismissed defendants because the plaintiffs had not pleaded an injury fairly traceable to each of the defendants' specific conduct. *See Thompson v. Bd .of Ed. of Romeo Cmty. Sch.*, 709 F.2d 1200, 1204–05 (1983); *Bushman v. Fid. Nat. Title Ins., Co.*,

No. 14-CV-10011, 2014 WL 4181974, at *2 (E.D. Mich. August 21, 2014); *Mull v. All. Mortg. Banking Corp.*, 219 F. Supp. 2d 895, 909 (W.D. Tenn. 2002).

Plaintiffs maintain that the Amended Complaint properly establishes Article III standing because they identified which three Defendants were insurers and alleged that the Defendant Insurers denied reasonable care benefits as a result of using the P&M Surveys. Amended Complaint ¶¶7-14, ¶¶36-37. ECF No.17 PgID 117. Plaintiffs state their injuries are traceable to the Defendant Non-insurers because Defendant Non-insurers either own or operate the three Defendant Insurers. *Id. at* 118. Plaintiffs argue that ownership and operational control of the Defendant Insurers alone demonstrates Article III standing for the Defendant Non-insurers. *Id*. Plaintiffs also assert that the Amended Complaint demonstrates standing by using court testimony (from another case in which Defendants were sued) to identify AAA leaders by name to show that those leaders directed the creation and implementation of P&M Surveys to cause injury to the Plaintiffs. *Id*.

Defendants argue that, even though Plaintiffs filed the Amended Complaint, Plaintiffs still have failed to identify which of the three Defendant Insurers issued an insurance policy to each of the Plaintiffs.  The assert that Plaintiffs have alleged only that they: (a) were "insured under a AAA Michigan No-Fault insurance policy," ECF No. 28, ¶¶16-18; (b) submitted no-fault claims "to **a Defendant insurance**

**carrier**," *id*. at ¶ 104 (emphasis added by Defendants); and (c) "have a contractual relationship with **either** of Defendants Auto Club Insurance Association, MemberSelect Insurance Company, **or** Freemont Insurance Company." *Id*. at ¶141 (emphasis added by Defendants).[1]

Defendants contend that such factual allegations are necessary to establish standing. *Mull*, 219 F.Supp.2d at 908 ("each named plaintiff must demonstrate that he satisfies the requirements of standing *vis a vis* each defendant.  Since named defendants fail to state which defendant actually holds their loans, they fail to meet this [standing] test with respect to any of the defendants."); *Bushman*, 2014 WL 4181974 (E.D. Mich. Aug. 21, 2014); *Fallick*, 162 F.3d at 423 (the individual standing of each named class action plaintiff with respect to each defendant is a threshold issue).  Defendants states that this is especially true with respect to a contract claim based on the no-fault insurance policy, citing *Fuller v. GEICO Indem. Co.*, 309 Mich. App. 495, 498 (2015) ("a no-fault insurance policy is a contract"), as an essential element is establishing "the existence of a contract between the parties." *Timmis v. Sulzer Intermedics, Inc.*, 157 F.Supp.2d 775, 777-78 (E.D. Mich.

---

[1]Defendants also argue that neither Fremont Insurance Company or MemberSelect Insurance Company issued a policy to any of the three named Plaintiffs but this is a factual issue nor ripe for determination in a motion to dismiss.

2001) (granting motion to dismiss because plaintiff "failed to identify the contract that forms the basis of his breach of contract claim").

The Court is not persuaded that the Amended Complaint should be dismissed due to a lack of Article III standing.   Defendants' argument that Plaintiffs have not met Article III for failing to identify the specific insurer that holds each Plaintiff's claim or underpaid attendant care benefits is not consistent with the binding law in the Sixth Circuit.   Plaintiffs have pleaded an injury fairly traceable to the Defendants under the class action exception rule acknowledged by the Sixth Circuit. "Fairly traceable" does not require plaintiffs in a class action to establish standing for each defendant that caused the injury when the facts of the case support the injury was a result of a "conspiracy or concerted schemes between the defendants." *Thompson*, 709 F.2d at 1204–05.

Specifically, Plaintiffs have pleaded an injury fairly traceable to Defendants by: (1) identifying which Defendants were the Insurers and which were the Non-insurers, (2) pleading that Plaintiffs had insurance policies with the Defendant Insurers, (3) pleading the Defendant Non-insurers directed the creation and use of the P&M Surveys, and (4) alleging that all these concerted actions resulted in the injury of underpayment of benefits to Plaintiffs. All these pleaded allegations

14

support that the injury is fairly traceable to all the Defendants under the first *Thompson* exception.

Even the case law cited by the Defendants supports a finding that Plaintiffs' injuries are fairly traceable to the Defendants. Defendants ignore the ruling that a plaintiff class can bring an action against defendants from whom they suffered no direct injury when there is a pleading of conspiracy or concerted schemes between the defendants that led to the injury of the plaintiffs.  The Amended Complaint meets those requirements by alleging that Plaintiffs' injury was a result of a concerted scheme between the Defendants to use the P&M Surveys to provide lower payments to the Plaintiffs, thereby injuring Plaintiffs.

The *Bushman* analysis relied on by Defendants fails to take into account a key difference between the allegations in *Bushman* and those by the Plaintiffs. In *Bushman*, the court stated "plaintiffs have not alleged that plaintiffs had a business relationship with any particular defendant." *Bushman,* 2014 WL 4181974, at *2. This is different from the current case, where the Plaintiffs have pleaded that all of the Plaintiffs have insurance policies with a Defendant Insurer and that all Defendants worked together to use the P&M Surveys to cause injury to the Plaintiffs.

The *Mull* case is not binding on the Court and is inconsistent with the exception that allows class standing when plaintiffs allege defendants have

conspired or schemed to cause an injury to the class. *Mull* also is distinguishable from the current case because those "plaintiffs d[id] not fall within the 'Juridical link' exception [because] the types of cases that fall within the exception are those that have either a contractual obligation among all defendants or a state or local statute which requires common action by defendants." *Mull*, 219 F. Supp. 2d at 909. Although the *Mull* case does not fall within the exception, Plaintiffs' case does. Plaintiffs have pleaded facts that establish contractual obligations among all Defendants. If Plaintiffs in the current case had to establish standing with regard to each defendant, as Defendants suggest, the exception would be rendered meaningless.

The Court concludes that Plaintiffs have met the requirements of Article III and pleaded facts that establish standing.

### C.     Fraudulent Concealment – Count I

With respect to Count I, Defendants argue Plaintiffs cannot avoid the one-year-back rule based on MCL 600.5855 because Plaintiffs' fraudulent concealment theory fails as a matter of law. Defendants contends that Plaintiffs' claims: (1) were discoverable; (2) are based on Defendants fraudulently concealing P&M Surveys that Defendants "did not have a duty to disclose;" and (3) are based on alleged actions by Defendants prior to injury. *Id*.

16

MCL 600.5855 provides:

> If a person who is or may be liable for any claim fraudulently conceals the existence of the claim or the identity of any person who is liable for the claim from the knowledge of the person entitled to sue on the claim, the action may be commenced at any time within 2 years after the person who is entitled to bring the action discovers, or should have discovered, the existence of the claim or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

*Id*.

In cases involving parties without a fiduciary relationship, the Michigan Court of Appeals has found "fraudulent concealment extends the applicable limitations period only when the defendant has made an affirmative act or representation." *Dillard v. Schlussel*, 308 Mich. App. 429, 443 (2014). The plaintiff has the burden of showing "that the defendant engaged in some arrangement or contrivance of an affirmative character designed to prevent subsequent discovery." *Id*. at 654 (quoting *Meyer & Anna Prentis Family Foundation, Inc. v. Barbara Ann Karmanos Cancer Institute,* 266 Mich.App. 39, 48 (2005)). The "plaintiff must plead in the complaint the acts or misrepresentations that comprised the fraudulent concealment." *Doe v. Roman Catholic Archbishop of Archdiocese of Detroit*, 264 Mich. App. 632, 643 (2004) (quoting *Sills v. Oakland Gen. Hosp.,* 220 Mich.App. 303, 312 (1996)). Mere silence does not amount to fraudulent concealment and, "[i]f liability were

discoverable from the outset, then MCL 600.5855 will not toll the applicable period of limitations." *Dillard*, 308 Mich. App. 429 at 655.

### 1.    **Discoverable Claim**

Defendants argue claims were discoverable by the Plaintiffs from "the moment they were paid an attendant care benefit." Defendants state their "alleged use and concealment of the surveys is irrelevant to when Plaintiffs claims accrued because the Plaintiffs were required to investigate their claim." *Id*. at PgID 79. Defendants support this argument with two cases. See *Moll v. Abbott Labs.*, 444 Mich. 1, 10 (1993); *Doe*, 264 Mich. App. at 641. Defendants also argue that Plaintiffs had a duty "at th[e] time [of injury] to seek legal assistance if [they] disagreed" with the amount they received. *Bromley v. Citizens Ins. Co. of Am.*, 113 Mich.App. 131, 137 (1982).

Plaintiffs respond by asserting that: (1) "there was no means [for plaintiffs] to discover this fraud and artifice because Defendants made a corporate decision to conceal it;" and (2) the "report reflecting higher rates … was only known to one lawyer and a select group of upper management." ECF No.17 PgID 130. Plaintiffs state that "the gravamen of *Bromley* is [that] there was no misrepresentation, not that claimants must hire lawyers." ECF No.17 PgID 128. Plaintiffs assert that "Defendants are obligated to investigate and pay the reasonable market value of the

18

services provided not some lesser amount they can get away with." ECF No. 17, PgID 129 (citing *Williams*, 250 Mich. App. at 267).

The Court is not persuaded by Defendants' argument that Plaintiffs' injury was discoverable. Plaintiffs sufficiently pleaded that "there was no means [for plaintiffs] to discover this fraud and artifice because Defendants made a corporate decision to conceal it." ECF No.17 PgID 130. Defendants' argument ignores that: (a) the Court must accept Plaintiffs' allegations as true; and (2) *Moll*, *Doe*, and *Bromley* all involved a summary judgment motion, not a motion to dismiss as in this case. For the reasons stated above, the Court concludes that Plaintiffs have pleaded their injury was not discoverable.

### 2. **Obligation to Disclose**

Defendants argue Plaintiffs' fraudulent concealment argument concerning Defendants' "alleged 'withholding and suppressing' of surveys … fails as a matter of law because there is no duty requiring Defendants to disclose the surveys." Defendants also assert that the insurance contract does not create a duty to disclose, and "there [wa]s no fiduciary duty as a matter of law between the insurer and insured that . . . require[d] disclosure." Citing *Prentis,* 266 Mich. App. at 48; *U S Fid & Guar Co v. Black*, 412 Mich. 99, 125 (1981); *Morris Assoc., Inc. v. DiStefano*, No. 303043, 2012 WL 2019083, at *1 (Mich. Ct. App., June 5, 2012); *Drouillard v. Metro Life*

19

*Ins. Co.*, 107 Mich. App. 608 (1981); *Van Emon,* 2007 WL 275882, at *3 (E.D. Mich. Jan. 26, 2007); *Wynn v. State Auto Mut. Ins. Co.*, 856 F. Supp. 330, 335 (E.D. Mich. 1994); *Basirico*, 2006 U.S. Dist. Lexis 87761, at *8; *Stamps v. State Farm Mut. Auto Ins. Co.*, No. 16-CV-14336, 2018 WL 4030814, at *6 (E.D. Mich. Aug. 23, 2018)).

The *Prentis* court stated:

"Generally, for fraudulent concealment to postpone the running of a limitations period, the fraud must be manifested by an affirmative act or misrepresentation. The plaintiff must show that the defendant engaged in some arrangement or contrivance of an affirmative character designed to prevent subsequent discovery." *Witherspoon v. Guilford,* 203 Mich.App. 240, 248, 511 N.W.2d 720 (1994), citing *Draws v. Levin,* 332 Mich. 447, 452, 52 N.W.2d 180 (1952). "Mere silence is insufficient." *Sills, supra* at 310, 559 N.W.2d 348. If liability were discoverable from the outset, then MCL 600.5855 will not toll the applicable period of limitations. *Witherspoon, supra* at 248–249, 511 N.W.2d 720. It was only plaintiff's lack of diligence in this case that prevented it from filing suit, and MCL 600.5855 did not toll the period of limitations. *Id.*

*Prentis*, 266 Mich. App. at 48.

The Court finds that Plaintiffs have pleaded that Defendants took the affirmative act of: (a) obtaining surveys, (b) using the surveys to adjust PIP claims, and (c) withholding and suppressing the use of the higher rates by its adjusters and from its insureds.   The affirmative acts collectively support Plaintiffs' argument that Defendants' "conduct amount[ed] to employment of artifice."   The Court

20

concludes that Plaintiffs have sufficiently pleaded that Defendants engaged in affirmative actions.

### 3. **Timing of Concealment**

Defendants argue that Plaintiffs fraudulent concealment claim "fails as a matter of law because Plaintiffs only allege [fraudulent] actions taken [by the Defendants] before the alleged injury" of lower payments, and that this does not meet the concealment requirements stated in *Doe*. Plaintiffs contend that Defendants improperly rely on *Doe.*   Plaintiffs assert that, in "no-fault claims, the concealment occurs after the claim is made because the insurance company has an obligation to investigate within 30 days of each claim."   ECF No.17 PgID 130. *Williams*, 646 N.W.2d at 483-85. Plaintiffs label Defendants' argument "nonsensical" because "Defendants are ostensibly investigating the claim by referencing and relying on the fraudulent and flawed P&M Survey each time they respond to a claim." ECF No.17 PgID 130.

The Court finds that Plaintiffs only allege that Defendants engaged in concealing acts prior to injury, whereas *Doe* requires fraudulent-concealment action to take place after the injury. *Doe,* 264 Mich. App. at 641. Plaintiffs' Amended Complaint includes allegations that Defendants' acts consisted "of obtaining the P&M Survey for use as a replacement for paying reasonable charges at reasonable

rates."   Plaintiffs further allege that Defendants obtained the P&M Surveys and used them to set the low rates, however, this occurred before Plaintiffs were impacted by the injury of lower payments.   Accordingly, those allegations do not meet the requirements of *Doe*.

The only alleged actions by Defendants that followed the adjustments based on the P&M Surveys were those of "withholding and suppressing [the] use of … [P&M Surveys] by its adjusters and from its insureds."   When so pleading, however: (a) Plaintiffs do not allege that Defendants directly acted to conceal Plaintiffs' claim; and (b) the alleged "withholding and suppressing" is comparable to mere silence, which does not amount to fraudulent concealment.

The Court does not find Plaintiffs' reliance on *Williams* sufficient to support a finding of post-injury action. In *Williams,* the court commented that if the "defendant [insurers] … desired to challenge or investigate the amount purportedly paid by BCBSM, [the insurers] could have and should have conducted some investigation of its own during the thirty-day legislative grace period to establish a lesser amount of uncoordinated benefits." *Williams*, 250 Mich. App. at 267. The Court finds that, although *Williams* allows that an insurer can investigate a claim after insurers receive the claim, it does not (as Plaintiffs desire) "obligate" the insurers to investigate.

The Court also is not persuaded that *Williams* is applicable to the current case because Plaintiffs' case is based on claims by three Plaintiffs who had their claims adjusted by the Defendant Insurers.   With an adjustment, the insurer usually initiates the adjustment by completing the calculations for the value of the benefit, and then sends the results to the insured. Under those circumstances, there is no need for the insurer to investigate their own calculations or any basis for assuming (as Plaintiffs do) that "Defendants are ostensibly investigating the claim" after they make adjustments. ECF No.17 PgID 130.

For the reasons stated above, the Court concludes that: (a) Plaintiffs have not satisfied MCL 600.5855 because they have not pleaded an affirmative act following the injury, and (b) the one-year back rule applies in this case.

### D.     FRCP 9(b) – Count I

With respect to Count I, Defendants also argue Plaintiffs failed to plead fraudulent concealment with the particularity required under FRCP 9(b). Plaintiffs argue they sufficiently pleaded fraudulent concealment with the necessary particularity but request the ability to amend their Amended Complaint if the Court finds the Amended Complaint lacks particularity. ECF No.17 PgID 132.

Rule 9(b) of the Federal Rules of Civil Procedure requires that "the circumstances constituting fraud or mistake shall be stated with particularity." "Rule

9(b) is designed, not only to put defendants on notice of alleged misconduct, but also 'to prevent fishing expeditions … and to narrow potentially wide-ranging discovery to relevant matters.'" *Republic Bank & Trust Co. v. Bear Stearns & Co., Inc.*, 683 F.3d 239, 255 (6th Cir. 2012) (dismissing securities fraud claim) (quoting *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011)). Rule 9(b) "requires that the acts constituting fraudulent concealment of a claim be pled in the complaint." *Evans v. Pearson Enterprises, Inc.*, 434 F.3d 839 (6th Cir. 2006). The Sixth Circuit requires plaintiffs to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Yuhasz v. Brush Wellman, Inc.,* 341 F.3d 559, 563 (6th Cir.2003) (citing *Coffey v. Foamex L.P.,* 2 F.3d 157, 161–162 (6th Cir.1993)).

The Court finds that Plaintiffs' fraudulent concealment allegations have not been pleaded with particularity. Plaintiffs have only alluded to a general "scheme of upper management" that alleges "Defendants were aware of the false and misleading nature of the reports, instructed Plante Moran LLP to develop the reports … [and] knowingly kept information about the deficient nature of the P&M Survey from its claims adjusters and claim mangers." ECF No.17 PgID 132. This general pleading of a scheme does not allege a specific time when, or place where, Defendants

fraudulently concealed and does not meet the requirements of Rule 9(b).

The Court concludes that Plaintiffs have not met the particularity required by Rule 9(b), such that Plaintiffs cannot toll their claims based on MCL 600.5855. Plaintiffs have requested that they be allowed to amend their pleadings, but the Court notes that Plaintiffs already was given that opportunity and did not do so. Unless Plaintiffs can allege a specific time and place that Defendants fraudulently concealed, any future amendments would be futile with respect to satisfying the requirements of Rule 9(b). Accordingly, if Plaintiffs desire to amend their claim for fraudulent concealment, the Court will require Plaintiffs to file a motion for leave to file an amended claim for fraudulent concealment. Any such motion should be limited to setting forth exactly how any such amended claim would satisfy the requirements of Rule 9(b). At this time, however, the Court grants Defendants' motion with respect to Count I and dismisses Count I.

### E. Count II - Implied Covenant of Good Faith

Defendants argue that Plaintiffs' breach of good faith and fair dealings claim fails because it is not recognized by Michigan law. It is well-established that "Michigan does not recognize a [separate] cause of action for breach of the implied covenant of good faith and fair dealing." *In re Leix Estate*, 289 Mich. App. 574, 591 (2010) (quoting *Dykema Gossett PLLC v. Ajluni,* 273 Mich.App. 1, 13 (2006)

(citations and quotation marks omitted), vacated in part on other grounds, 480 Mich. 913 (2007)). "An implied covenant of good faith and fair dealing in the performance of contracts is recognized by Michigan law only where one party to the contract makes its performance a matter of its own discretion." *Stephenson v. Allstate Ins. Co.*, 328 F.3d 822, 826 (6th Cir. 2003) (citing *Hubbard Chevrolet Co. v. General Motors Corp.,* 873 F.2d 873, 876 (5th Cir.1989) (applying Michigan law)). "Discretion arises when the parties have agreed to defer decision on a particular term of the contract." *Id*. at 826 (applying Michigan law).

Defendants contend that the no-fault "act and insurance contract [that] establishes the insured's rights" does not place unilateral discretion of performance on the Defendants.   Plaintiffs assert that Defendants had unilateral discretion because both Plaintiffs and the members of the Plaintiff Class submitted no-fault claims for family provided attendant care benefits and "once [a] claim was submitted, approved and paid, it was Defendant insurance carriers alone who were responsible to calculate the hourly rate to pay those claims." ECF No.17 PgID 133 (citing Amended Complaint at ¶¶6, 64, and 90). Plaintiffs also argue that they pleaded "the basis to find that Defendants held the requisite unilateral discretion to determine the hourly rates used to pay benefits." Amended Complaint at ¶¶43-47 and ¶¶ 76-81. ECF No.17 PgID 134.

26

The Court grants Defendants' motion to dismiss Plaintiffs' implied covenant of good faith and fair dealing claim. Plaintiffs have not pleaded what specifically gives Defendants the unilateral discretion of performance required by Michigan law. Plaintiffs argue ¶¶46-47 of the Amended Complaint establishes the unilateral duty of the Defendants, but the only legal support provided by Plaintiffs for the reference is *Williams*. Plaintiffs partially take *Williams* out of context, however, when they assert *Williams* provides that "the insurance company has a duty to investigate on its own if it wishes to challenge the amount of benefits owed." *Williams* actually states that, "if [insurers] had desired to challenge or investigate the amount purportedly paid by BCBSM, [insurers] could have and should have conducted some investigation of its own during the thirty-day legislative grace period to establish a lesser amount of uncoordinated benefits owed." *Williams*, 250 Mich. App. at 267. As such, although *Williams* provides that an insurer can investigate a claim after insurers receive the claim, it does not establish that "Defendants held the requisite unilateral discretion" required by Michigan law for an implied covenant of good faith and fair dealing claim.

For the reasons stated above, the Court dismisses Plaintiffs' implied covenant of good faith and fair dealing claim.

## F.     Count III - Unjust Enrichment

Defendants contend that Plaintiffs failed to allege the elements of an unjust enrichment claim against any of the Defendants and that "it is improper [for Plaintiffs] to plead a claim for unjust enrichment, even in the alternative, where there is an express written contract which governs the parties' conduct." *Id.* (citing *Livonia Volkswagen, Inc v. Universal Underwriters Group*, No. 06-13619, 2008 WL 880189, at *8 (E.D. Mich. Mar. 31, 2008); *Aetna Cas & Sur Co v. Dow Chem Co*, 883 F Supp 1101, 1112 (E.D. Mich. 1995)).   Plaintiffs agree that the unjust enrichment claim is not viable with respect to the Defendant Insurers because there are express written contracts between Plaintiffs and the Defendant Insurers.

As to the Defendant Non-insurers, Plaintiffs maintian that, when they pleaded that Defendants used "a deficient survey to pay Benefits at artificially low rates," it can be inferred that "Defendants received a benefit from Plaintiffs in the form of Plaintiffs' acceptance of the artificially low rates, and that it would be inequitable for Defendants to retain such benefit." ECF No.17 PgId 137.   Plaintiffs argue that Rule 8 allows an unjust enrichment claim to be pleaded in the alternative because "Defendants do not concede that an enforceable contract exists between Plaintiffs and each of the five Defendants." ECF No.17 PgId 137.

"The elements of a claim of unjust enrichment are: (1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of

the retention of the benefit by defendant." *Duncan v. Tricho Salon & Spa, LLC*, No. 300446, 2011 WL 6061341, at *5 (Mich Ct App, December 6, 2011) (quoting *Barber v. SMH (US), Inc,* 202 Mich.App 366, 375; 509 NW2d 791 (1993)). Pleading "mere conclusions" generally will not suffice, but "legal conclusions can provide the complaint's framework" when they are supported by "factual allegations." *Iqbal*, 556 at 678. "A person who has been unjustly enriched at the expense of another is required to make restitution to the other." *B & M Die Co. v. Ford Motor Co.,* 167 Mich.App. 176, 181 (1988). "In such a situation, a contract will be implied by law to prevent unjust enrichment. But a contract cannot be implied when an express contract already addresses the pertinent subject matter." *Liggett Rest Group, Inc. v City of Pontiac*, 260 Mich.App. 127, 137 (2003)

The Court denies Defendant's motion with respect to Plaintiffs' unjust enrichment claim *vis a vis* the Defendant Non-insurers. *Iqbal* allows a court to draw a reasonable "legal conclusion" based on the "factual allegations" of a complaint, and Plaintiffs have pleaded enough "factual allegations" for the Court to make a reasonable "legal conclusion" for Plaintiffs' claim of unjust enrichment. *Iqbal*, 556 U.S. at 678.   At Paragraphs 18-30 of the Amended Complaint, Plaintiffs allege facts that reveal a business relationship between all Defendants and shows Defendant Non-insurers own or operate Defendant Insurers. Additionally, at several places

throughout the Amended Complaint, Plaintiffs allege that Defendants worked together to cause the injury of lower payment to Plaintiffs. Based on these facts and allegations in the Amended Complaint, it is reasonable for the Court to infer that the Defendant Non-insurers received a financial benefit (amounting to unjust enrichment) through their ownership of the Defendant Insurers. As there is no contract between the Plaintiffs and the Defendant Non-insurers, an unjust enrichment claim is an appropriate alternative pleading for Plaintiffs.

For the reasons stated above, the Court concludes that Plaintiffs' unjust enrichment claim is sufficiently pleaded as it pertains to the Defendant Non-insurers.

### G.    Count V - Tortious Interference with Contractual Relationship

In Count V, Plaintiffs allege that the Defendant Insurers breached their contract with Plaintiffs (as set forth in Count I) because the Defendant Non-Insurers "unjustly instigated the breach of contract by the [Defendant Non-Insurers] with Plaintiffs without justification." ECF No. 28, at ¶¶ 142-44.

The elements of tortious interference with a contract are: (1) the existence of a contract; (2) a breach of the contract; and (3) an unjustified instigation of the breach by the defendant. *Mahrle v. Danke*, 216 Mich.App. 343, 350 (1996). *See also Health Call of Detroit v. Atrium Home & Health Care*, 268 Mich. App. 83, 90 (2005); *Badiee v. Brighton Area Schs.*, 265 Mich.App. 343, 365-66 (2005).   A plaintiff must

show that a defendant was a "third-party" to the contractual relationship. *Servo Kinetics, Inc. v. Tokyo Precision Instr. Co.*, 475 F.3d 783, 800 (6th Cir. 2007). *See also Schipani v. Ford Motor Co.*, 102 Mich.App. 606, 613 (1981); *Indusource, Inc. v. Sandvik Tooling France S.A.S.*, No. 16-10056, 2016 WL 6216003, at *6 (E.D. Mich. Oct. 25, 2016).   As recently stated in another Eastern District of Michigan case:

> The law is well settled that an agent, acting within the scope of her agency, cannot be liable for causing her principal to breach a contract, unless the agent acted for purely personal gain with no benefit to the corporation. *Willis v. New World Van Lines,   Inc.*, 123 F. Supp.2d 380, 397 (E.D. Mich. 2000). This is true because the agent is not acting for any improper purpose, but solely in the economic interests of the principal. Given this proper motivation, contract damages are deemed sufficient and tort remedies are unwarranted. Similarly, when a parent company acts to protect its economic interests, by encouraging the breach of an unprofitable contract of its subsidiary, the law recognizes that this conduct is not tortious, and damages to the nonbreaching party are limited to contractual damages only. *See Servo Kinetics*, 475 F.3d at 801 (98 percent shareholder cannot be considered a third party capable of tortious interference); *Camderm Pharmacal, Ltd. v. Elder Pharmaceuticals*, 862 F.2d 597, 601 (6th Cir. 1988) (finding that parent company is privileged to interfere with its subsidiary's contracts in order to further its legitimate business interests); *Speroni S.p.A. v. Perceptron, Inc.*, 12 F. App'x 355, 360 (6th Cir. 2001) (collecting cases holding that parent company is privileged to breach a contract that is no longer in its subsidiary's economic interests); *Inland Waters Pollution Control, Inc. v. Jigawon*, Inc., No. 05-74785, 2008 WL 205209, at *13 (E.D. Mich. Jan. 22, 2008) (holding that affiliated entities with common ownership cannot be liable for tortious interference with contractual relations). The Restatement (Second) of Torts, §§ 767, 769 (1979) also recognizes a financial interest privilege whereby a party may safely

31

interfere with a contract as long as the party acts to protect its own interests.

In *Speroni*, the Sixth Circuit recognized that the general rule that a parent company is privileged to breach a contract that is no longer in its subsidiary's economic interests is subject to an exception "when the parent has utilized 'wrongful means' or 'acted with an improper purpose.'" 12 F. App'x at 360. Indusource has not alleged that defendants did so here. Accordingly, the general rule applies, and defendants are entitled to dismissal of the tortious interference of contractual relations claim.

*Indusource*, 2016 WL 6216003, at **7-8.

Defendants argue that Plaintiffs' claim fails as a matter of law because Plaintiffs have alleged that they had a contractual relationship with one or more of the Defendant Insurers, all of whom are part of the same corporate family as the Defendant Non-insurers.   Plaintiffs concede that, if a defendant shows that it is affiliated with one of the parties to the contractual agreement, that defendant is ordinarily entitled to dismissal. *Helzer v. F Joseph Lamb Co.*, 171 Mich.App 6, 9 (1988). Plaintiff argues, however, that an exception exists if the corporate parent or affiliate engages in a *per se* wrongful or illegal act. *Murphy v. Birchtree Dental, P.C.*, 964 F.Supp. 245, 250 (E.D.Mich.1997) (citing *Reed v. Michigan Metro Girl Scout Council*, 201 Mich.App. 10, 13 (1993) ("a corporate agent is not liable for tortious interference with the corporation's contract unless the agent acted purely for

personal gain and with no benefit to the corporation"); *see also Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals*, 862 F.2d 597, 601 (6th Cir.1988).[1]

Plaintiffs acknowledge that the only cases that address the *per se* wrongful or illegal act exception involve a natural person agent of a corporation engaging in a "frolic and detour" of sorts to the corporate principal.   Plaintiffs nevertheless contend that the principle applies equally to a situation where a parent corporation acts in an illegal or wrongful fashion that impairs the contractual relations to the detriment of the affiliate or subsidiary. Plaintiffs do not cite any authority to support that contention, nor have they alleged that either or both of the Defendant Non-insurers operated solely for their own benefit.   Instead, Plaintiffs have alleged that "[a]ll Defendants have received and retained insurance premiums, and withheld properly payable family-provided attendant care benefits, and done so wrongfully and unjustified." ECF No. 28, ¶ 118.

According to Plaintiffs' allegations, Defendant Auto Club Services is wholly-owned by Defendant Auto Club Group, and Defendant Auto Club Services is the

---

[1]Plaintiffs' allegations also indicate that the Defendant Non-Insurers do not control the Defendant Insurers, as "No-Fault Insurers had the sole and unilateral discretion to determine how to calculate the hourly rate it paid to Plaintiff policyholders" and "the No-fault Insurer Defendants are the *only* ones in the relationship who review, approve and pay the hourly rates at issue…" ECF No. 28, ¶¶ 108, 113 (emphasis in original).

Attorney-in-Fact for the Defendant Insurers. ECF No. 28, ¶¶ 20, 22, 25, 29. Plaintiffs do not allege that either of the Defendant Non-insurers (Auto Club Group or Auto Club Services) is a third party to the contracts at issue, and they do allege that the Defendant Non-insurers "own and thus receive premium dollars from payments made by class members to the . . . Insurer Defendants." *Id.* at ¶ 119.

Based on the foregoing allegations, the Court finds that Plaintiff has alleged that Defendant Auto Club Services is an agent of the Defendant Insurers and that Defendant Auto Club Group is the parent of Defendant Auto Club Services.   There are no allegations that specify how or why one or both of the Defendant Non-insurers "utilized 'wrongful means' or 'acted with an improper purpose.'" *Speroni*, 12 F. App'x at 360.   Accordingly, the Court should find that Defendants are entitled to dismissal of the tortious interference of contractual relationship claim.

## H.    Count VI - Civil Conspiracy

In Count VI, Plaintiffs allege that all of the Defendants conspired to:

(1)(a) misrepresent to Plaintiffs and the class that the Survey described in the preceding paragraphs was an actual survey knowing it was not a survey and did not accomplish what Defendants purport, (b) misrepresent that the Survey was a proper evaluation of No-Fault benefits, (c) misrepresent that the Survey was outdated, and (d) instruct upper Management to hide from adjusters at the Auto Club Insurance Group, MemberSelect Insurance Company, and Freemont Insurance Company the versions of the Survey that provided for higher hourly rates, (2) entice Plaintiffs and the class into accepting underpayment of

benefits, (3) convert Plaintiffs funds for their own use and benefit as set forth in this Amended Complaint, and (4) interfere with the contractual relationship between Plaintiffs and [Auto Club Insurance Group, MemberSelect Insurance Company, and Freemont Insurance Company].

ECF No. 28, ¶147.

Under Michigan law, civil conspiracy is defined as a "combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194 Mich.App. 300, 313 (1992); *Fenestra, Inc. v. Gulf Am. Land Corp.*, 377 Mich. 565, 587 (1966). *See also El Camino Res., LTD v. Huntington Nat. Bank*, 722 F.Supp.2d 875, 900 (W.D. Mich. 2010), aff'd, 712 F.3d 917 (6th Cir. 2013) (liability for civil conspiracy is dependent upon defendants' adoption of the common purpose or design by express or implied agreement).   As summarized by the *El Camino* court:

> . . . Michigan law holds defendants liable for all foreseeable acts of the other tortfeasor. "Conspiracy, by reason of the connection involved among the conspirators, may cause individuals to be responsible, who, but for the conspiracy, would not be responsible at all." *Roche*, 9 N.W.2d at 863 (quoting Bush, 16 N.W. at 225). <u>Likewise, if two persons act in concert with a common design or purpose and one of them commits a wrongful act injuring a third party, the person acting in concert with the wrongdoer is liable for the injury under a concert of action theory.</u> *Gaufin v. Valind*, 268 Mich. 269, 256 N.W. 335, 336 (1934). In either case, the defendant's embrace of the actor's purpose or

design—whether by agreement or by action—renders the defendant liable for the underlying tort.

*El Camino*, 722 F. Supp. 2d at 900–01.

The Court finds that the civil conspiracy claim should be dismissed for two reasons. First, "a claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable, tort." *Early Detection Center, P.C. v. New York Life Ins. Co.*, 157 Mich. App. 618, 632 (1986). The only two separate, actionable torts claimed by Plaintiffs were for bad faith breach of contract (Count IV) and tortious interference (Count V). Because the Court has concluded that neither of those claims is viable, there is no separate, actionable tort upon which to base the conspiracy claim.

Second, Defendants, as part of the same corporate family, cannot be liable of conspiracy where there is no third-party involved. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 435 (6th Cir. 2008) (under the intra-corporate conspiracy doctrine, "a parent company and its wholly owned subsidiaries are incapable, as a matter of law, of conspiracy"); *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir. 1985) ("The only conspiracy alleged in this case is one between Marathon and Emro. There is no dispute that Emro is a wholly-owned subsidiary of Marathon. Judgment for

36

defendants on the section 1 conspiracy claim therefore must be affirmed."). *See also Directory Sales Mgmt. Corp. v. Ohio Bell Tele. Co.*, 833 F.2d 606, 611 (6th Cir. 1987).

For the reasons stated above, the Court dismisses Plaintiffs' civil conspiracy claim (Count VI).

## IV. CONCLUSION

For the reasons stated above,

IT IS ORDERED that Defendants' Motion to Dismiss [ECF No. 33] is GRANTED IN PART and DENIED PART.

The Court GRANTS Defendants' Motion to Dismiss Count I of Plaintiffs' Amended Complaint, specifically, Plaintiff's claim that Defendants violated Subsection 3107(1)(a) of the Michigan Automobile No-Fault Insurance Act.

The Court GRANTS Defendants' Motion to Dismiss the Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealings in Count II.

The Court DENIES Defendants' Motion to Dismiss Plaintiffs' Unjust Enrichment claim at Count III.

The Court GRANTS Defendants' Motion to Dismiss Plaintiffs' Intentional or Tortious Interference with Contractual Relationship at Count V.

The Court GRANTS Defendants' Motion to Dismiss Civil Conspiracy at

Count VI.[1]

IT IS FURTHER ORDERED that Defendant's Motion for Reconsideration [ECF No. 43] is DENIED AS MOOT.

IT IS SO ORDERED.

Date: July 20, 2022                          s/Denise Page Hood
                                             DENISE PAGE HOOD
                                             UNITED STATES DISTRICT JUDGE

---

1 The Court previously dismissed Plaintiff's Bad Faith Breach of Contract claim at Count IV. *See* ECF No. 41.